\*\* E-filed April 23, 2012 \*\*

NOT FOR CITATION

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| ARNIE GELLER; ET AL., | No. C11-80269 LHK (HRL) |
| Plaintiffs, v. | **ORDER ON MOTION TO QUASH SUBPOENA DUCES DECUM** |
| GUNTHER VON HAGENS; ET AL., | [Re: Docket No. 1] |
| Defendants. | |

This motion to quash a subpoena duces tecum arises out of proceedings in the Middle District of Florida. Plaintiffs Arnie Geller, Hongjin Sui, Dalian Hoffen Bio-technique Co., and Dalian Plastination Co. (collectively "plaintiffs"), sued Gunther Von Hagens, Plastination Company, Inc. ("PCI") and the Institute for Plastination (collectively "defendants") alleging defamation and tortious interference with several European venues where plaintiffs hoped to show their exhibitions. Both the plaintiffs and defendants operate traveling exhibitions of plastinated[1] human and animal bodies and body parts. The defendants, and specifically PCI, operate the traveling exhibition called "Body Worlds," while Plaintiffs have acted as suppliers to a rival company called Premier Exhibitions (and plaintiff Geller is Premier Exhibition's former president).

Plaintiffs issued subpoenas duces tecum on approximately two dozen museums throughout the United States where defendants held their "Body Worlds" exhibition. One of these museums is San Jose's Tech Museum ("Tech"). The subpoena seeks the production of 44 broad categories of

---

[1] Plastination is a technique used to preserve bodies or tissue for display by impregnating them with polymers.

documents. Defendants move to quash the subpoena issued on Tech on two grounds: (1) pursuant to Fed. R. Civ. P. 45 on the grounds that it seeks private and confidential information and (2) pursuant to Fed. R. Civ. P. 26 on the grounds that it is overbroad and seeks irrelevant information. Dkt. No. 1. Tech has filed a notice of joinder in the motion to quash, in which it adopts the arguments made by the defendants, and also argues that the subpoena is unduly burdensome pursuant to Fed. R. Civ. P. 45.[2] Dkt. No. 6. Plaintiffs opposed the motion. Dkt. No. 9. The defendants and Tech filed replies. Dkt. Nos. 10, 11.

Defendants also notified this court that they had moved for a protective order in the Florida court. Dkt. No. 11. The Florida court granted in part and denied in part that motion, making the instant motion to quash partially MOOT. See Dkt. No. 12, Exh. A ("Florida Order"). The Florida court identified three categories of documents requested through the subpoenas: (1) requests 1-8 and 44 are the "Communication Requests," (2) requests 16-18, 20-41 and 43 are the "Provenance Requests," and (3) requests 9-15, 19, 42, and 44 are the "Financial Requests." Id. The Florida Order quashed the Communication Requests and granted the motion for a protective order as to the Financial Requests. It denied the motion with respect to the Provenance Requests because it found them relevant under Fed. R. Civ. P. 26, but expressly noted that it "makes no finding about the Museum Subpoenas under [Fed. R. Civ. P.] 45 standards."

Following the Florida court's ruling, plaintiffs and defendants offered conflicting views of what remains for this court to decide on the instant motion. Defendants argue that this court can consider all Rule 45 arguments, while plaintiffs argue that the Florida Order completely disposes of defendants' claims, leaving only Tech's argument of undue burden in support of quashing the subpoena. See Dkt. Nos. 13, 15. Because the Florida Order expressly states that the court did not consider Rule 45 implications at all, this court concludes that the issue before it is the following: whether the Provenance Requests should be quashed under Fed. R. Civ. P. 45 for seeking

---

[2] Although Tech's joinder of the motion to quash was untimely under Fed. R. Civ. P. 45(c)(2)(B) (requiring a movant to object to a subpoena duces tecum within 14 days after service of the subpoena), the court will overlook this defect. Tech filed its joinder only a few days after the deadline for bringing a motion to quash, stating that plaintiffs failed to notify them of the time for filing objections under Fed. R. Civ. P. 45(c)(2)(B). Because plaintiffs have not disputed this oversight, and defendants brought their motion to quash in a timely fashion, Tech's lateness will not operate as a waiver of its objections.

2

"confidential and private business information" (as defendants argue) *or* for being unduly burdensome (as Tech argues).

Based on applicable authority and all moving papers, the court rules as follows.

LEGAL STANDARD

Under Fed. R. Civ. P. 45(a)(1)(C), a nonparty to a civil suit, like the Tech Museum, can be subpoenaed for documents relevant to the suit. Under Fed. R. Civ. P. 26(b)(1), documents are discoverable if they are not privileged and "relevant to any party's claim or defense" or "reasonably calculated to lead to the discovery of admissible evidence." A court may quash an otherwise relevant subpoena for several enumerated reasons, such as: (1) if the subpoena "requires disclosure of privileged or other protected matter, if no exception or waiver applies," (2) if the subpoena "requires disclos[ure of] a trade secret or other confidential research, development, or commercial information," or (3) if the subpoena "subjects a person to undue burden." Fed. R. Civ. P. 45(c)(3)(A)(iii)-(B)(i). The burden is on the party resisting discovery to demonstrate that discovery should not be permitted. Fed. R. Civ. P. 26(b).

DISCUSSION

**I. The Subpoena Requests**

The Provenance Requests seek information regarding the source of the bodies used in defendants' Body Worlds exhibitions. The Provenance Requests are requests 16-18, 20-41, and 43 in the subpoena. Requests 16-18 seek "any and all documents relating to" the origin of specimens, donation records of specimens, and "the provenance of the specimens" used in Body Worlds exhibitions. Dkt. No. 1, Exh. A ("Subpoena"). Request 20 seeks "any and all documents . . . "which evidence or relate to the human body specimens or human body parts . . . received or used by you [Tech] in the Body Worlds exhibition." Id. Requests 21-41 request documents from various subcategories within the broad scope of Request 20, including (1) specimens from persons who were "tortured, abused or executed;" (2) specimens obtained through a variety of Chinese entities, including medical schools and centers, law enforcement agencies, and at least one private company; (3) specimens "of Asian descent" or "from the Peoples [sic] Republic of China;" (4) documentation detailing where and from whom each body was obtained, what price (if any) was paid, whether there

is proof of consent, the cause of death, and where each body has been displayed; and (5) any documentation relating to both "casting specimens" and fetal specimens. Id.

Several of the requests are duplicative of other requests, or "catchall" provisions that request all documents "not previously requested" that concern any specimen used in one of the "Body Worlds" exhibitions. Id. Two of the requests seek any documentation that would "support[] any contention" that the specimens used "were not (a) Chinese, (b) executed prisoners, or (c) did not sustain abuse or torture." Id. Finally, Request 43 identifies 16 discrete types of documents to be produced for each specimen used in the Body World exhibition at the subject museum. These include the following: autopsy and toxicology reports; other medical records, including medical histories; certificates for death, donation, and origin; consent forms; photographs taken before, during, and after plastination; documents identifying the source of each specimen; ID numbers; demographic information including "the name, age, race, and sex of the specimen;" shipment information; and any proof of money charged or paid for specimens.

**II. Defendants' Claim that Subpoena Seeks "Confidential and Private Business Information"**

Defendants' motion offers almost no argument in support of their claim that the subpoena should be quashed because it seeks protected information pursuant to Fed. R. Civ. P 45. Defendants generally argue that their nondisclosure agreement with Tech should protect some or all of the requested documents from being produced. However, defendants do not even cite to the provision of Rule 45 that they believe is applicable in this case. In addition, where they do refer to specific requests in the subpoena, they refer only to the Communication and Financial Requests. The Provenance Requests are completely absent from their discussion of Rule 45.

The Florida court has already ruled that the Provenance Requests are relevant to plaintiffs' claim of tortious interference. Accordingly, this court may only quash the subpoena if defendants meet their burden of demonstrating that the discovery sought should not be permitted. At no point in the original motion or in any of defendants' subsequent filings do they offer a cogent argument in support of their claim that the Provenance Requests are protected business information. Moreover, what argument defendants do make is directed at parts of the subpoena that do not include the

Provenance Requests. In short, defendants have failed to offer an argument that meets the burden of persuasion. Accordingly, there is no basis for quashing the subpoena on the basis that it seeks privileged or protected business information.

**III. Tech's Claim that the Subpoena is Unduly Burdensome**

A court evaluating whether a subpoena is unduly burdensome under Fed. R. Civ. P. 45(c)(3)(B)(i) must "consider 'such factors as relevance, the need of the party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are described and the burden imposed.'" Moon v. SCP Pool Corp., 232 F.R.D. 633, 637 (C.D. Cal. 2005) (quoting Travelers Indem. Co. v. Metro. Life Ins. Co., 228 F.R.D. 111, 113 (D. Conn. 2005)).

Tech argues in its joinder to the motion to quash that, in addition to defendants' arguments, the subpoena should be quashed because it will subject Tech to undue burden. Tech argues that the subpoena seeks "virtually every" document connected to the Body World exhibits. Dkt. No. 5, p. 2. Tech, a non-profit entity, hosted two Body Worlds exhibitions, one in 2007-2008, the other in 2010-2011. Dkt. No. 10, p. 1. Therefore, Tech would have to produce documents spanning a five year period, from months before the first exhibition until the end of the second exhibition. Tech also states that many of the relevant employees, such as the CEO and CFO during the first exhibition, and the manager responsible for logistics at both exhibitions, are no longer working at Tech. Dkt. No. 5, p. 2. Tech estimates that the cost of (1) identifying the remaining employees who had access to relevant documents, and (2) collecting relevant emails from two email servers used in the relevant time period, would be over $40,000. Id. at 2-3. Tech states that this figure does not include the cost of reviewing the emails once they are all located. Finally, Tech notes that plaintiffs have not made an attempt to obtain these documents by requesting them from the parties to the lawsuit. In their opposition, plaintiffs do not address Tech's arguments.

Weighing the six elements courts shall consider when evaluating a motion to quash, the court concludes that Tech's arguments outweigh the plaintiffs'. First, although the Florida Order held that the Provenance Requests are relevant with respect to "intentional false statements *to the European Venues* about the provenance of both [parties'] specimens," plaintiffs have not offered

5

any argument to suggest that the documents Tech would produce would be responsive on this point. Thus, while the Provenance Requests are theoretically relevant to plaintiff's case, plaintiff has made no showing that the documents in Tech's possession are actually likely to be relevant. Second, the plaintiff's need for the documents weighs in favor of denying the motion to quash, as they clearly need documents like those requested to prove their claim of tortious interference. Third, the document requests are extremely broad (so broad that many seem duplicative of one another), and seek virtually every document that Tech and defendants ever exchanged concerning the provenance of the specimens. Fourth, the time period covered by the subpoena is quite long—approximately five years, beginning with the initial negotiations between defendants and Tech for the first exhibition in 2007, and continuing through the end of the second exhibition in 2011. Fifth, the documents are not described with particularity—the broad requests will require Tech to undertake significant efforts locating documents and determining their responsiveness to the subpoena. Finally, the burden on Tech is significant. Tech estimates that the cost of identifying potentially responsive files alone would be in excess of $40,000, exclusive of the time, energy, and money required to determine which of those files should actually be produced. Given that Tech is a non-profit museum, this figure is even more burdensome.

    As important as the six-factor analysis of undue burden is the fact that plaintiffs seek these documents only from third party sources. In essence, plaintiffs would impose a heavy burden on Tech to locate and analyze large amounts of information that should be available from the defendants. Many, if not all, of the documents requested in the Provenance Requests are materials that defendants would have generated or received from other sources when they obtained the specimens at issue. Virtually none of the documents would have been created by Tech, and many of the documents do not even appear to be necessary for the negotiations and planning communications between Tech and the defendants in anticipation of hosting the "Body Worlds" exhibitions. That the plaintiffs seek these documents from a third party rather than from the defendants themselves only exacerbates the burdensomeness of the request.

    Accordingly, because the significant expense and undue burden that compliance would impose on Tech outweighs the potential relevance of the documents to plaintiffs, and because

plaintiffs could seek these document from the defendants themselves, the motion to quash is GRANTED as to the Provenance Requests.

CONCLUSION

Based on the foregoing, IT IS ORDERED THAT:

1. The motion to quash is MOOT with respect to the Communication and Financial Requests, pursuant to the Florida Order; and
2. The motion to quash is GRANTED as to the Provenance Requests.

Dated: April 19, 2012

HOWARD R. LLOYD
UNITED STATES MAGISTRATE JUDGE

**C11-80269 LHK (HRL) Notice will be electronically mailed to:**

| | |
|---|---|
| Gary Prudian | gprudian@manningleaver.com |
| Kevin Vick | kvick@bostwickjassy.com |
| Gary Bostwick | gbostwick@bostwickjassy.com |
| Jean-Paul Jassey | jpjassy@bostwickjassy.com |
| Leslie Kramer | lkramer@fenwick.com |

**Counsel are responsible for distributing copies of this document to co-counsel who have not registered for e-filing under the court's CM/ECF program.**